# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>IN THE MATTER OF THE SEARCH OF AN APPLE<br>IPHONE 5 LOCATED AT 4525 STATE RTE 11,<br>MALONE, NY 12953 (US BORDER PATROL STN) | )<br>)<br>)  Case No.  8:13-m-515 (LAK)<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A (incorporated by reference)

located in the _____Northern_____ District of _____New York_____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii),<br>(a)(1)(A)(v)(II), (a)(1)(B)(ii); | Transporting Aliens Within the United States; |
| 8 U.S.C. § (a)(2), (a)(2)(B)(iii) | Bringing Aliens to the United States |

The application is based on these facts:

Please see attached affidavit of Jared Jarvis (incorporated by reference)

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jared Jarvis, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Oct. 25, 2013

_____
*Judge's signature*

City and state: Plattsburgh, NY

Larry A. Kudrle, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is an Apple iPhone 5, serial number DNPJG3VTDTTN, hereinafter the "Device." The Device is currently located at 4525 State Route 11, Malone, NY 12953 (U.S. Border Patrol Station).

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 8 U.S.C. §§ 1324(a)(2), (a)(2)(B)(iii), (a)(1)(A)(ii), (a)(1)(A)(v)(II) and (a)(1)(B)(ii) and involve Manuel Zamora-Rivas, Gonzalo Reyes, and/or Esau Zamora since January 1, 2013, including without limitation:

   a. All communications, including text messages, voicemails, or records of phone calls between or among any of the above-listed individuals;

   b. Any information recording Manuel Zamora-Rivas's schedule or travel from August 1, 2013 to the present;

   c. All GPS records, including all GPS records relating to locations in or around the United States-Canada border, including Churabusco, New York, Chateaugay, New York, and Hogansburg, New York, Dick's Country Store, and any border crossing locations;

   d. All records relating to the rental or attempted rental of a motor vehicle; and

   e. Any events relating to the smuggling or transportation of aliens from Canada to the United States or within the United States.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE IPHONE 5 CURRENTLY LOCATED AT 4525 STATE ROUTE 11, MALONE, NY 12953 (U.S. BORDER PATROL STATION). | No. 8:13-CR-398 (DNH)<br>No. 8:13-MJ-346 (LAK) |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, JARED JARVIS, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent with the United States Department of Homeland Security, Bureau of Customs and Border Protection ("CBP"), United States Border Patrol ("USBP"). I have been a Border Patrol Agent since September 2008. I have been serving as a Prosecutions Agent since March 2013. I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law/Operations, Drivers' Training, Physical Techniques, and Firearms. I am currently assigned to the USBP Station in Burke, New York. During my tenure with the USBP, I have participated in investigations of violations of United States immigration laws, including alien smuggling, many of which resulted in the arrest and conviction of the persons responsible for the crimes.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is an Apple iPhone 5, serial number DNPJG3VTDTTN, hereinafter the "Device." The Device is currently located at 4525 State Route 11, Malone, NY 12953 (U.S. Border Patrol Station).

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

6.     During the early morning hours on or about July 15, 2013, a rented 2012 white Dodge Grand Caravan van bearing Ontario license number BHHX356, was stopped by CBP agents in Chateaugay, New York, approximately five miles from the Canadian border. The van, which was driven by Gonzalo Reyes, was also occupied by eight other individuals, six of whom were aliens. Subsequent record checks conducted by CBP agents revealed that Reyes, himself a citizen of Canada, had entered the United States several hours before in a 2002 blue Volkswagen Jetta bearing Ontario license number BRMV713. The Jetta was registered in Ontario in Reyes's name.

7.     After being read his rights and executing a written *Miranda* waiver, Reyes, a citizen of Canada, told agents that he had been asked to pick up some people in the United States and drop them off at a hotel. Reyes stated that he was given a phone number to text that he assumed belonged to Manuel Zamora-Rivas. The individual Reyes assumed was Manuel

2

Zamora-Rivas texted Reyes to meet at the "Twin Leaves" gas station, which is located in Hogansburg, New York. Manuel Zamora-Rivas subsequently met Reyes at the Twin Leaves gas station, and Reyes then followed Manuel Zamora-Rivas in his car to a motel in Malone, New York. When they arrived at the motel, according to Reyes, Manuel Zamora-Rivas stated that he had a room and that "I'm going to show you where in the GPS on the phone where I want you to stop and get them." Reyes stated that he and Manuel Zamora-Rivas then switched cars, and Reyes drove to the pickup spot and stopped and unlocked the doors. One of the aliens, Victor Mejia-Hernandez, who later pled guilty to illegal reentry, testified at a material witness deposition that Reyes was the driver who picked up Mr. Mejia-Hernandez and his family members in a van just south of the Canadian border.

   8. Shortly before the Dodge Caravan was detained, Border Patrol agents responding to a seismic sensor activation alert near the U.S.-Canada border near Churubusco, New York encountered a blue 2003 Volkswagen Jetta parked outside Dick's County Store in Churubusco with its headlights on. The car was occupied by Manuel Zamora-Rivas. When questioned by CBP agents, Zamora-Rivas stated that the Jetta belonged to a friend. Record checks confirmed that it was the same Jetta that Reyes had crossed in earlier that evening and that was registered to Reyes in Canada. Record checks also revealed that the white Dodge Caravan had been rented in Canada by Manuel Zamora-Rivas. Zamora-Rivas has been identified as the brother of Esau Zamora, the passenger in the Dodge Caravan at the time it was pulled over, who told investigators that he had crossed the aliens.

   9. Based upon Reyes's account, agents checked every motel in Malone, New York and found that Manuel Zamora-Rivas had booked a room at the Dreamland Motel, where his name was written in pencil on the front desk calendar next to the phone number 613-709-0506.

10. Manuel Zamora-Rivas was arrested that same day by investigators and charged with transporting aliens under 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(I), and (v)(II). The Device was in his possession at the time of his arrest and remains in law enforcement custody.

11. On October 11, 2013, a grand jury returned an indictment charging (1) Esau Zamora with six counts of bringing aliens to the United States in violation of Title 8, United States Code, Section 1324(a)(2) and (a)(2)(B)(iii); (2) Gonzalo Reyes with one count of transporting aliens within the United States in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (a)(1)(B)(ii); and (3) Manuel Zamora-Rivas and Esau Zamora with one count of aiding and abetting the transportation of aliens within the United States in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (a)(1)(B)(ii).

12. Based on my experience, the foregoing facts establish probable cause to believe that the electronically stored information described in Attachment B is recorded on the device described in Attachment A.

13. The Device is currently in the lawful possession of CBP. As noted above, it came into CBP's possession in the following way: it was seized by CBP on July 15, 2013 incident to the arrest of Manuel Zamora-Rivas on alien transporting charges. Therefore, while CBP might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

14. The Device is currently in storage at 4525 State Route 11 Malone, NY 12953 (U.S. Border Patrol Station). In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of CBP.

## **TECHNICAL TERMS**

15.	Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

    sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed

7

properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.att.com, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
JARED JARVIS
Border Patrol Agent
U.S. Department of Homeland Security
Bureau of Customs and Border Protection

Subscribed and sworn to before me
on October 25, 2013:

_____
HON. LARRY A. KUDRLE
UNITED STATES MAGISTRATE JUDGE

11